The **ITEM COMPANY** d/b/a Blue Ridge: The Item Company, Plaintiff–Appellee,

v.

The **UNITED STATES,** Defendant– Appellant.

No. 95–1524.

United States Court of Appeals, Federal Circuit.

Oct. 11, 1996.

J. Kevin Horgan, deKieffer, Dibble & Horgan, of Washington, D.C., argued for plaintiff-appellee.

Mikki Graves Walser, Commercial Litigation Branch, Civil Division, Department of

Justice, International Trade Field Office, of New York City, argued for defendant-appellant. With her on the brief was Joseph I. Liebman, Attorney in Charge. Also on the brief were Frank W. Hunger, Assistant Attorney General, and David M. Cohen, Director, Department of Justice, of Washington, D.C. Of counsel on the brief was Beth C. Brotman, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs Service, of New York City.

Before RICH, CLEVENGER, and RADER, Circuit Judges.

RICH, Circuit Judge.

Defendant-appellant the United States (government) appeals a judgment of the Court of International Trade (CIT), holding that plaintiff-appellee The Item Company, d/b/a/ Blue Ridge: The Item Company's (Blue Ridge's) TV remote control caddies, which are known commercially as TV Companions, are correctly classified under subheading 6307.90.9989 of the 1995 Harmonized Trade Schedule of the United States (HTSUS) as other made up textile articles, dutiable at 7% ad valorem and not subject to quota restraints. *Item Co. v. United States,* No. 95–05–00617, 1995 WL 450964 (Ct.Int'l Trade 26 July 1995). We affirm.

## I

## BACKGROUND

This case involves a denial by Customs of protests by Blue Ridge, challenging the classification of merchandise pursuant to 28 U.S.C. § 1581(a).

### A. The Merchandise

The TV Companions at issue include stuffed, toy-like figures of textile material made in various forms, including animals and human characters. The figures are designed to be both humorous and decorative, and the TV Companions have names like "TV Bunny," "TV Duck," "Channel Cat," "TV Hound," and "TV Kitty." Each TV Companion is weighted with pellets on the interior bottom portion of the figure. Attached to the bottom edge of each figure is a flat textile panel with pockets designed to hold small magazines (e.g., a television guide) and a remote control. The panel is designed to hang from the weighted figure when the figure in placed on furniture, televisions, or ledges.

### B. Proceedings Below

The United States Customs Service (Customs) classified the merchandise as "other furnishing articles" under subheading 6304.92.00 or 6304.93.00, depending upon the textile materials involved. Then, on 9 March 1995, Customs excluded the merchandise because Blue Ridge did not have a textile visa from the Peoples Republic of China. Under an agreement between the United States and China, specific textiles from China are not permitted entry unless accompanied by a Chinese visa. Per the agreement, textiles and textile products are classified according to quota categories. Articles falling within quota category 666 are subject to textile quota restrictions, and articles classified under HTSUS heading 6304 fall under quota category 666.

Blue Ridge protested the exclusion on 13 March 1995, claiming that its articles are properly classified as "other made up articles" under subheading 6307.90.9989, dutiable at 7% ad valorem and not subject to quota restraints. Customs denied Blue Ridge's protest on 11 April 1995, and Blue Ridge appealed to the CIT.

The CIT reversed Customs and stated that "Congress did not intend for heading 6304 to include items with characteristics other than flat, protective, and decorative." Slip op. at 11. It held that the TV Companions are properly classified under subheading 6307.90.9989, and Customs should not have excluded these articles from entry into the United States. *Id.* The CIT subsequently denied the government's 28 August 1995 motion to stay the CIT's judgment directing Customs to release the merchandise posthaste. The government now appeals.

## II

## ANALYSIS

■ The issue is whether the TV Companions have been classified under the appropri-

ate tariff provision. Resolution of that issue entails construing specific terms in the tariff provisions and determining whether the TV Companions come within the description of such terms as properly construed. We review the CIT's construction of terms in tariff provisions de novo, and we review the CIT's determination of whether the merchandise at issue comes within the description of such terms as properly construed for clear error. *Stewart–Warner Corp. v. United States*, 748 F.2d 663, 664–65, 3 Fed.Cir. (T) 20, 22 (Fed. Cir.1984); *see also Lynteq, Inc. v. United States*, 976 F.2d 693, 696 (Fed.Cir.1992) (the meaning of tariff provision terms is a question of law subject to de novo review). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

Both parties agree that the TV Companions are properly classified under one or more of the subheadings of Chapter 63 of the HTSUS. The pertinent portions of that chapter read, with our emphasis, as follows:

6304.92.00 Other made up textile articles; *other furnishing articles*, excluding those of heading 9404 [1]; other [2]: not knitted or crocheted, of cotton .......... 7.1%.

6304.93.00 Other made up textile articles; *other furnishing articles*, excluding those of heading 9404; other: not knitted or crocheted, of synthetic fibers .......... 10.5%.

6307.90.9989 Other made up textile articles; *other made up articles*, including dress patterns; other [3]; other [4]; other [5]; other [6]; other [7] .......... 7%.

As may be seen by our emphasis above, we must decide whether Blue Ridge's TV Companions are "other furnishing articles," as urged by the government, or "other made up articles," as urged by Blue Ridge. To do this, we find it unnecessary to conclusively decide what the term "furnishings" means as used within heading 6304. Rather, we need only construe that term to the extent necessary to decide whether the CIT erred in its holding that the TV Companions do not come under heading 6304, and thus fall under heading 6307. Therefore, we do not decide whether the CIT's statement that "it is clear ... that Congress did not intend for heading 6304 to include items with characteristics other than flat, protective and decorative," slip op. at 11, is accurate.

■ Both 6304 and 6307 are general headings or basket provisions—the word "other" makes this clear. Such headings "catch" merchandise which is similar to that previously enumerated, but which is not specifically listed. In cases like the instant one, where we must decide whether a specific type of merchandise falls within a general heading, we use the rule of statutory construction known as *ejusdem generis*, which means of the same kind, class, or nature.

■ "As applicable to classification cases, *ejusdem generis* requires that the imported merchandise possess the essential characteristics or purposes that unite the articles enumerated *eo nomine* [by name] in order to be classified under the general terms." *Sports*

1. Heading 9404 includes the following: mattress supports; articles of bedding and similar furnishing (for example, mattresses, quilts, eiderdowns, cushions, pouffes, and pillows) fitted with springs or stuffed or internally fitted with any material or of cellular rubber or plastics, whether or not covered.

2. I.e., not bedspreads.

3. I.e., not floorcloths, dishcloths, dusters, and similar cleaning cloths; or lifejackets and lifebelts.

4. I.e., not labels; cords and tassels; corset lacings, footwear lacings, or similar lacings; surgi-

cal drapes; toys for pets, of textile material; or wall banners, of man-made fibers.

5. I.e., not surgical towels; cotton towels of pile or tufted construction; pillow shells, of cotton; shells for quilts, eiderdowns, comforters, and similar articles of cotton.

6. I.e., not national flags.

7. I.e., not other towels of cotton; other towels of man-made fibers; furniture movers' pads of cotton; or furniture movers' pads of man-made fibers.

*Graphics, Inc. v. United States,* 24 F.3d 1390, 1392 (Fed.Cir.1994) (citing *Nissho–Iwai Am. Corp. v. United States,* 641 F.Supp. 808, 810 (Ct.Int'l Trade 1986)). The headings preceding heading 6304 list the following articles by name: blankets, traveling rugs, bed linen, table linen, toilet linen, kitchen linen, curtains (including drapes), interior blinds, curtain valances, and bed valances. Heading 6304 itself lists three more items: bedspreads, wall hangings, and pillow covers. Therefore, merchandise properly classified under 6304 must possess the same essential characteristics as these articles. We note that heading 6304 specifically excludes articles under heading 9404, namely, mattress supports; articles of bedding and similar furnishings (for example, mattresses, quilts, eiderdowns, cushions, pouffes, and pillows) fitted with springs or stuffed or internally fitted with any material or of cellular rubber or plastics, whether or not covered. Finally, the *Explanatory Notes* for heading 6304 read, in part, as follows:

> These articles include wall hangings and textile furnishings for ceremonies (e.g., weddings or funerals); mosquito nets; bedspreads (but *not including* bed coverings of *heading 94.04* ); cushion covers, loose covers for furniture, antimacassars; table covers (*other than* those having the characteristics of floor coverings ...); mantlepiece runners; curtain loops; valances (*other than* those of *heading 63.03* ).[8]

In the instant case, all of the witnesses and the CIT agreed that the essential characteristic of the TV Companions is their function as organizers. Slip op. at 10–11. From our reading of the HTSUS and the *Explanatory Notes,* we do not believe that an essential characteristic or purpose uniting the articles enumerated *eo nomine* in headings 6301–6304 is to function as organizers. We therefore agree with the CIT's holding that the TV Companions are not properly classified under heading 6304. Slip op. at 11.

Heading 6307 is an even more generic basket provision than heading 6304. Merchandise that does not fall within one of headings 6301–6306 falls within 6307. The *Explanatory Notes* to heading 6307 read, in part, as follows:

> This heading covers made up articles of any textile material which are *not included* more specifically in other headings....

> It includes, in particular:

> (1) Floor cloths, dish cloths, dusting cloths and similar cleaning cloths....

> (2) Life-jackets and life-belts.

> (3) Dress patterns, usually made of stiff canvas....

> (4) Flags, pennants and banners, including bunting for entertainments, galas or other purposes.

> (5) Domestic laundry or shoe bags, stocking, handkerchief or slipper sachets, pyjama or nightdress cases and similar articles.

> (6) Garment bags (portable wardrobes)....

> \* \* \* \* \* \*

> (12) Tea cosy covers.

> (13) Pin Cushions.[9]

We agree with the CIT's observation that the items in the *Explanatory Notes* to heading 6307 have little in common. Slip op. at 11. This is not surprising since, as the *Explanatory Notes* provide, it is an ultimate catch-all provision within Chapter 63. The CIT determined, nevertheless, that TV Companions share their "organizer function" with articles such as shoe bags and pajama bags, which similarly provide storage for small items. *Id.* Therefore, the CIT concluded that TV Companions are more properly placed among the 6307 items than among the 6304 items. *Id.* We agree.

---

**8.** *Explanatory Notes to the Harmonized Commodity Description and Coding System.* We agree with Blue Ridge's assertion that the term "furnishings" is ambiguous and derives its meaning from the context in which it is used. Therefore, we find it beneficial, as did the CIT, to consult the *Explanatory Notes.*

**9.** *Id.* at 867–68.

## III

## CONCLUSION

For the above reasons, we hold that the evidence of record supports the CIT's decision. Therefore, the CIT's classification finding that the TV Companions are properly classified under subheading 6307.90.9989 of the HTSUS as "other made up articles," dutiable at 7% ad valorem and not subject to quota restraints, is affirmed.

*AFFIRMED.*